Filed 2/27/13  Thompson v. Bacchus CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MISTY THOMPSON, | No. B234047 |
| Plaintiff and Respondent, | (Super. Ct. No. SS020350) |
| v. | |
| HAROUN BACCHUS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  David J. Cowan, Temporary Judge.  Reversed.

Haroun Bacchus, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

In this case, longtime co-tenants in a rent-controlled apartment engaged in repeated domestic disputes that resulted in several court actions, visits by police, and, ultimately, imposition of a one-year restraining order. One of the tenants appeals from an ex parte order modifying the restraining order, contending his due process rights were violated by abuse of the ex parte procedure. We agree, and therefore reverse.

## BACKGROUND

On February 2, 2011, appellant Haroun Bacchus, respondent Misty Thompson, and respondent's relatives, including her husband, Alexander Yerkes, appeared before Judge Joseph Biderman at a hearing to determine whether Thompson's request for a restraining order against Bacchus should be granted. We take the facts from representations made by the parties at that hearing and from court filings.

Bacchus leased and resided in a two-bedroom apartment in the City of Santa Monica beginning in 1993. In 2004, Bacchus accepted Thompson as an equal co-tenant, and she became a signatory on the lease. Tension between Bacchus and Thompson arose early in their co-tenancy and escalated after 2009, when Yerkes moved into the apartment.

On January 13, 2011, Thompson obtained a temporary restraining order against Bacchus and petitioned the trial court for an injunction to prevent harassment. At the February 2, 2011 hearing, Thompson represented that Bacchus was verbally abusive, physically menaced and harassed her, habitually blocked doorways and elbowed her in the kitchen, moved her property without permission, and once pounded on her bedroom door at 3:00 a.m.

Bacchus admitted he became upset with Thompson and Yerkes at times but denied harassing them. He represented that Thompson and Yerkes were intrusive, moved his property without permission, blocked his bedroom doorway, and encroached on his portions of the common area and kitchen.

2

The parties represented they were incompatible as roommates, but neither wanted to give up the leasehold, as Santa Monica's rent control ordinances had resulted in favorable lease terms. (See *Kavanau v. Santa Monica Rent Control Bd.* (1993) 19 Cal.App.4th 730, 732 [describing rent control in Santa Monica].)

Judge Biderman summarized his findings as follows: "I think that—I think that there's been some rudeness on both sides, it appears to me that your level of frustration is higher, emanates from a frustration that she's still there with her husband and you thought it was going to be a short-term thing. You both want to have this rent control place, it appears. [¶] Further, it appears to me that there has been some physical contact that's unnecessary, not something that's going to cause physical harm necessarily, but cause a heightened level of concern. Does it constitute harassment? Maybe. Maybe, barely so as far as a legal standard is concerned. [¶] Can't get a stay-away order here. You want an order to stop aggressive and violent outbursts? If someone wants to yell at you, they can yell at you, say 'I'm sick of you being here.' I can't say that you can't say, 'I don't like living with you. I don't like where you put your stuff in the kitchen. I don't like how you make pancakes. Don't turn the fan on.' I can't stop that."

Judge Biderman asked the parties to draft a proposed order. Offering some guidance to Thompson, he said, "I can't say you can't have an argument. He can say he doesn't like living with you. [¶] . . . [¶] He can say it's my turn to use the kitchen. If you can do it, I'd like to see what you can put together in a proposed order and I will review that."

On February 2, 2011, the court issued a one-year restraining order enjoining Bacchus from harassing, attacking, striking, threatening, abusing, or hitting Thompson or keeping her under surveillance or blocking her movements.

On May 31, 2011, Yerkes appeared ex parte on Thompson's behalf to request amendment of the restraining order to include a stay-away order. The request was granted. As amended, the restraining order provided that Bacchus must stay at least 100 yards away from Thompson and Yerkes and their home and vehicles. However, the stay-

3

away provision ended with the language: "This stay-away order does not prevent the person in (2) [Bacchus] from going to or from that person's home or place of work."[1]

The expiration date of February 1, 2012, was unchanged.

Despite the provision that Bacchus not be prevented from going to or from his home, at some point the parties apparently came to believe he was required to move out of the apartment. He apparently did so.

On June 14, 2011, Bacchus moved ex parte to further amend the restraining order to permit him to enter his home. That motion was denied. On June 24, 2011, Yerkes moved ex parte to amend the restraining order to permit Bacchus to enter the apartment for two hours to remove his personal property. That motion was granted.

Bacchus appeals from the May 31, 2011 order amending the restraining order to include a stay-away provision.

## DISCUSSION

Bacchus contends the May 31, 2011 ex parte proceedings violated his procedural due process rights because he was given no notice of them. He requests that we "reverse the trial court's decision on the now expired stay away order."

No temporary restraining order may be granted without notice to the opposing party unless it appears from facts shown by affidavit or verified complaint that (1) great or irreparable injury will result to the applicant before the matter can be heard on notice and (2) the applicant certifies either that the opposing party was informed of the proceedings or could not or for specified reasons should not be informed. (Code Civ. Proc., § 527, subd. (c).) We have reviewed the court file and find no record of notice to Bacchus of the May 31, 2011 ex parte proceedings and no explanation why he could not or should not have been informed of the proceedings. The May 31 order modifying the February 2 restraining order therefore exceeded the trial court's jurisdiction, and must be reversed.

---

[1] In the actual restraining order, the "2" has a circle around it. We substitute parentheses for the circle.

4

The order was invalid on the merits as well, for two reasons. First, when a tenant on a lease seeks to dispossess a co-tenant she must bring a complaint for partition. (Code Civ. Proc., § 872.010 et seq.) Such an action proceeds according to statutes and rules governing civil actions generally, and requires the filing of a complaint and service of summons. (Code Civ. Proc., §§ 872.030, 872.230, 872.310.) Here, by re-modifying the May 31, 2011 modification of the February 2 restraining order to permit Bacchus access to the apartment for two hours, the trial court implicitly endorsed the parties' misconception that the May 31 modification disposed Bacchus of his leasehold rights. Such dispossession cannot occur in ex parte, un-noticed injunction proceedings. Therefore, to the extent the May 31 order dispossessed Bacchus of his co-tenancy, it was invalid.

Second, the May 31 order was invalid because Yerkes had no standing to seek it. Yerkes was neither a co-tenant with Bacchus nor a party to the proceedings. Nor was he Thompson's attorney, a fact of which we take judicial notice after having consulted the State Bar of California website. Yerkes was Thompson's guest. As such, he had no standing to seek an order that would, apparently by common misconception, evict Bacchus from his own apartment.

For both these reasons, the May 31 order was improper.

## DISPOSITION

The trial court's May 31, 2011 order modifying the February 2, 2011 restraining order is reversed.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


MALLANO, P. J.                    ROTHSCHILD, J.

5